IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

WILLIAM J. PAATALO,

        Plaintiff,

    vs.

JPMORGAN CHASE BANK,

        Defendant.

Case No.  6:15-cv-01420-AA
OPINION AND ORDER

John A. Cochran
The Cochran Law Firm
3404 SE 45th Ave
Portland, OR 97206
    Attorney for plaintiff

Frederick B. Burnside
Davis Wright Tremaine, LLP
1201 Third Avenue
Suite 2200
Seattle, WA 98101-1688

Kaley L. Fendall
Kevin H. Kono
Davis Wright Tremaine, LLP
1300 SW Fifth Avenue
Suite 2400
Portland, OR 97201-5630
    Attorneys for defendant


PAGE 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Plaintiff William J. Paatalo seeks a declaratory judgment deeming null and void the 2009 foreclosure of his home loan and trustee's sale of the property securing the loan. Defendant JPMorgan Chase, the purchaser of the property at the trustee's sale, moves to dismiss. For the reasons set forth below, defendant's motion is denied.

<u>BACKGROUND</u>

In 2006, plaintiff refinanced the loan on his property ("the property") in Yachats, Oregon. Compl. ¶ 2. He obtained a $880,000 "Option Arm" loan and a nearly $110,000 (later increased to $155,000) home equity line of credit ("HELOC") from Washington Mutual Bank, F.A. ("WaMu"). Compl. ¶¶ 2, 3. Both loans were secured by deeds of trust on the property. Compl. ¶ 2.

Plaintiff alleges WaMu misapplied payments and reported false derogatory information to credit reporting agencies on the HELOC account. Compl. ¶ 5. After disputing those actions with WaMu, plaintiff alleges he began to suspect fraud. Compl. ¶ 6. He alleges WaMu inflated the appraised value of his property, falsified plaintiff's income on his loan application without his knowledge or consent,[1] and committed numerous violations of the

---

[1] Contrary to the complaint, defendant characterizes the statement of income on plaintiff's loan application as "a representation [p]laintiff made to WaMu, not a lender disclosure." Def.'s Reply Supp. Mot. Dismiss at 7 (emphasis in original). But allegations a lender altered or otherwise

PAGE 2 - OPINION AND ORDER

Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq., including "fail[ing] to provide proper 'Notices of Rescission' on the 2006 loans[.]" Plaintiff further alleges he sent a written "Notice of Rescission" on both loans to WaMu on or about March 29, 2008. Plaintiff asserts WaMu sent him a letter declining his rescission and attaching a "payoff quote" of just under one million dollars. Compl. ¶ 7. According to plaintiff, the letter stated he could not rescind unless he first paid off the amount of the debt in full — something he was unable to do. In July 2008, plaintiff filed suit against WaMu.

On September 25, 2008, at the "height of the global financial crisis, [WaMu] was seized by its regulator . . . in what has been described as 'the largest bank failure in U.S. history.'" Anchor Savs. Bank, FSB v. United States, 121 Fed. Cl. 296, 302 (Fed. Cl. 2015) (quoting Robin Sidel et al., WaMu Is Seized, Sold Off to J.P. Morgan, In Largest Failure in U.S. Banking History, Wall Street Journal, Sept. 25, 2008, available at www.wsj.com/articles/SB122238415586576687). Pursuant to a Purchase and Assumption Agreement, the Federal Deposit Insurance Corporation ("FDIC") transferred many of WaMu's assets and liabilities to

_____

falsified the income on a borrower's loan application in order to obtain approval for a higher loan amount are common components of predatory lending claims. See, e.g., Penaloza v. Select Portfolio Servicing, Inc., No. CV 14-02571-AB (PJWx), 2014 WL 6910334 at *2 (C.D. Cal. Dec. 8, 2014); Garner v. Bank of Am. Corp., No. 2:12-CV-02076-PMP-GWF, 2013 WL 5492691 at *1 (D. Nev. Sept. 30, 2013).

defendant.  <u>Id.</u>; Compl. ¶ 28.  After WaMu's failure, plaintiff's pending claims against WaMu "went to the FDIC," pursuant to the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1811 <u>et seq.</u>  Compl. ¶ 8.  Plaintiff alleges he did not file a TILA rescission claim in court or assert one in the FIRREA claims process because WaMu told him he had to first be able to tender the full payoff amount for the loan. Compl. ¶ 9.

Plaintiff alleges on April 2, 2009, WaMu recorded a "Notice of Default and Election to Sell" in connection with the property. Compl. ¶ 10.  Plaintiff further alleges a set of additional documents were recorded in connection with the property on July 31, 2009.  Compl. ¶ 11.  These documents included a Notice of Foreclosure, Trustee's Notice of Sale, and affidavits claiming WaMu was the beneficiary of plaintiffs' deeds of trust.  At the trustee's sale, defendant purchased the property for $410,000 cash, and on August 18, 2009, a Trustee's Deed was issued to defendant for the property.  Compl. ¶ 13.

In late 2010, defendant filed an unlawful detainer action against plaintiff in state court.  Compl. ¶ 14.  Plaintiff recorded a lis pendens on the property.  Compl. ¶ 15.  On July 12, 2011, while the unlawful detainer action was still being litigated, defendant sold the property for $285,000.

In February 2015, the United States Supreme Court decided
Jesinoski v. Countrywide Home Loans, 135 S. Ct. 790 (2015).  After
Jesinoski was decided, plaintiff alleges he sent defendant a notice
memorializing the March 29, 2008 rescissions.  Compl. ¶ 18.
Plaintiff asserts Jesinoski makes clear "[t]he loan and contracts
were void as of March 29, 2008, and must be cancelled as a matter
of law."  Compl. ¶ 40.

Plaintiff filed this action on July 29, 2015.  He asks this
court to declare (1) plaintiff is the sole owner of the property;
(2) the foreclosure of the Deeds of Trust was null and void; and
(3) all documents recorded on or against title to the subject
property after the March 29, 2008 notices of rescission are null
and void.  Compl. ¶ 41.  Defendant moves to dismiss for failure to
state a claim.

STANDARD

Under Fed. R. Civ. P. 12(b)(6), a complaint is construed in
favor of the plaintiff, and its factual allegations are taken as
true.  Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th
Cir. 2010).  "[F]or a complaint to survive a motion to dismiss, the
non-conclusory 'factual content,' and reasonable inferences from
that content, must be plausibly suggestive of a claim entitling the
plaintiff to relief."  Moss v. U.S. Secret Serv., 572 F.3d 962, 969
(9th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678
(2007)).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.    "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007).    "[G]enerally the scope of review on a motion to dismiss for failure to state a claim is limited to the [c]omplaint[.]" Daniels-Hall, 629 F.3d at 998.

## DISCUSSION

Defendant argues the complaint should be dismissed for two reasons.[2]    First, it asserts plaintiff never completed the steps required to rescind the loans under TILA.    Second, it contends even if plaintiff rescinded the loans in March 2008, any rights plaintiff had to the property were cut off by the trustee's sale.

---

[2] Defendant also argues the complaint should be dismissed because (1) plaintiff is barred from asserting any claims stemming from WaMu's allegedly wrongful conduct against defendant; and (2) the statute of limitations has run on all affirmative TILA claims related to the 2006 loans.  Those statements are both correct as a matter of law, but it does not follow dismissal is warranted.  First, plaintiff is not attempting to hold defendant liable for WaMu's actions; plaintiff is arguing WaMu's security interest in the property was void as of the date of the notice of rescission, which means WaMu had no interest in the property to transfer to defendant when WaMu was placed in receivership.  Second, plaintiff has specifically disclaimed any intent to assert affirmative TILA claims in this lawsuit.

PAGE 6 - OPINION AND ORDER

I. <u>Rescission Under TILA</u>

"Congress enacted TILA 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.'" <u>Hauk v. JP Morgan Chase Bank USA</u>, 552 F.3d 1114, 1118 (9th Cir. 2009) (quoting 15 U.S.C. § 1601). "To effectuate TILA's purpose, a court must construe 'the Act's provisions liberally in favor of the consumer' and require absolute compliance by creditors." <u>Id.</u> (quoting <u>In re Ferrell</u>, 539 F.3d 1186, 1189 (9th Cir. 2008)). TILA provides special rescission rights for loans secured by a borrower's principal dwelling. 15 U.S.C. § 1635(a); <u>Semar v. Platte Valley Fed. Sav. & Loan Ass'n</u>, 791 F.2d 699, 701 (9th Cir. 1986). TILA's "buyer's remorse" provision, <u>Semar</u>, 791 F.2d at 701, grants buyers the right to rescind within three days of either "the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later[.]" 15 U.S.C. § 1635(a). The right to rescind expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first." <u>Id.</u> § 1635(f).

The effect of this provision is to create two separate rescission rights. The first is an "unconditional" right to rescind, good for three business days after the transaction. Jesinoski, 135 S. Ct. at 792. The second is a "conditional" right. Id. If more than three days have passed since the transaction was consummated, the right to rescind exists only if the lender has failed to provide the required information, forms, and disclosures. This conditional right "does not last forever"; it expires after three years or upon the sale of the property "[e]ven if a lender never makes the required disclosures[.]" Id. (emphasis in original).

Under the statute, rescission triggers an unwinding process. TILA provides "[w]hen an obligor exercises his right to rescind . . . , he is not liable for any finance or other charge, and any security interest given by the obligor, including any interest arising by operation of law, becomes void upon such a rescission." 15 U.S.C. § 1635(b). Within 20 days after "receipt of notice of rescission," the lender must "return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary . . . to reflect the termination of any security interest created under the transaction." Id. At that point, the borrower is required to "tender the property to the creditor[.]" Id.

PAGE 8 - OPINION AND ORDER

Plaintiff alleges because WaMu failed to provide the required notices, he possessed a conditional right to rescind in March 2008, and he timely delivered written notice of his intent to rescind as required by 15 U.S.C. § 1635(a). He further alleges WaMu told him he would have to tender the full payoff amount of the loan in order to rescind, contrary to 15 U.S.C. § 1635(b), which instead required WaMu to take the first steps to unwind the loan.

It is undisputed more than three years have passed since the consummation of plaintiff's 2006 loans and plaintiff's right to rescind, if not yet exercised, has expired. Thus, the viability of plaintiff's claim that WaMu's security interest in his property was voided in March 2008 hinges on the effect of the notices of rescission to WaMu. Taking the allegations in the complaint as true, if those notices actually rescinded the loan, plaintiff's complaint will survive the motion to dismiss. If, on the other hand, notice of intent to exercise the conditional right of rescission did not actually effect the rescission, defendant is entitled to dismissal. The Supreme Court answered this question in Jesinoski. A unanimous Court declared "rescission is effected when the borrower notifies the creditor of his intention to rescind." Jesinoski, 135 S. Ct. at 792 (emphasis added). Thus, if — as plaintiff alleges — WaMu failed to provide the required disclosures and plaintiff delivered written notice of rescission in March 2008,

the rescission was effected and the security interest in plaintiff's property voided at that time.

Defendant disputes this reading, arguing <u>Jesinoski</u> concerns the time period in which a borrower must provide written notice of his intent to exercise a right to rescind. The court agrees <u>Jesinoski</u>'s holding concerns the three-year life of the rescission right. The question, however, was whether a borrower can exercise her rescission right by sending written notice of rescission within three years, or whether she must also file a lawsuit within that time period to enforce her rescission right. <u>Jesinoski</u>, 135 S. Ct. at 791. The Court had to determine when rescission actually occurred in order to answer that question:

> The language of [the statute] leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely.

<u>Id.</u>   Thus, the <u>Jesinoski</u> holding rested on the Court's determination, as a matter of statutory interpretation, that written notice <u>actually effects</u> the rescission. Defendant correctly notes a number of federal appellate courts, prior to <u>Jesinoski</u>, distinguished between notice of intent to exercise the rescission right and the rescission itself. <u>See</u>, <u>e.g.</u>, <u>Gilbert v. Residential Funding, LLC</u>, 678 F.3d 271, 277 (4th Cir. 2012) ("We must not conflate the issue of whether a borrower has exercised her right to rescind with the issue of whether the rescission has, in

PAGE 10 - OPINION AND ORDER

fact, been completed and the contract voided."); accord Yamamoto v. Bank of New York, 329 F.3d 1167, 1172 (9th Cir. 2003). That distinction, however, cannot survive the Court's clear statement "rescission is effected" at the time of notice. Jesinoski, 135 S. Ct. at 792.

Defendant argues this reading of Jesinoski cannot be correct because it means "a borrower's mere notice of rescission . . . automatically converts a secured lender into an unsecured lender, leaving the lender with no other remedy but to file suit to challenge the validity of a borrower's rescission." Def.'s Reply Supp. Mot. Dismiss at 3-4. Essentially, defendant argues rescission cannot be the default rule. Taken to its logical conclusion, defendant's argument would require borrowers to file suit to enforce their right to rescind, rendering no rescission the default rule. The Supreme Court implicitly rejected defendant's argument when it declared "rescission is effected" at the time of notice, without regard to whether a borrower files a lawsuit within the three-year period. Jesinsoki, 135 S. Ct. at 792; see also Sherzer v. Homestar Mortg. Servs., 707 F.3d 255, 258 (3d Cir. 2013) (text of TILA and implementing regulation "support[] the view that to timely rescind a loan agreement, an obligor need only send a valid notice of rescission"); Lippner v. Deutsche Bank Nat'l Trust Co., 544 F. Supp. 2d 695, 703 (N.D. Ill. 2008) (plaintiff's timely written notice under TILA entitled him "as a matter of law . . . to

rescission"); Alexandra P. Everhart Sickler, And the Truth Shall
Set You Free:  Explaining Judicial Hostility to the Truth in
Lending Act's Right to Rescind a Mortgage Loan, 12 Rutgers J.L. &
Pub. Pol'y 463, 481 (Summer 2015) ("As a practical consequence of
[the Jesinoski] ruling, a lender now bears the burden of filing a
lawsuit to contest the borrower's ability to rescind.")

This reading of Jesinoski does not, as defendant asserts,
amount to holding "the process of unwinding a loan is automatic and
complete upon a borrower's written notice of rescission."  Def.'s
Reply Supp. Mot. Dismiss at 3.   After WaMu received plaintiff's
notice of rescission, it had two options.  It could have begun the
unwinding process by returning plaintiff's down payment or earnest
money and taking action to "reflect the termination of [the]
security interest," pursuant to 15 U.S.C. § 1635(b).  Those actions
would, in turn, have triggered plaintiff's obligation to tender a
payoff of the remaining loan amount.  See Lippner, 544 F. Supp. 2d
at 702 ("The issue of whether [the borrower] can satisfy her
rescission obligations [does] not arise until [the lender] ha[s]
completed [its] obligations pursuant to TILA.")   In the
alternative, WaMu could have filed a lawsuit to dispute plaintiff's
right to rescind the loan.  Plaintiff alleges WaMu did neither of
those things.  Compl. ¶ 9.  The question here is what happens when
the unwinding process is not completed and neither party files suit
within the TILA statute of limitations.  In such circumstances,

PAGE 12 - OPINION AND ORDER

<u>Jesinoski</u> directs that the rescission and voiding of the security interest are effective as a matter of law as of the date of the notice.

Finally, defendant argues even if <u>Jesinoski</u> means rescission is effective upon a borrower's notice, that holding cannot be applied "retroactively" to 2008. Def.'s Reply Supp. Mot. Dismiss at 4 (emphasis omitted). But there is no retroactivity issue here. When a court interprets a statute, it is not "retroactive" to apply the decision to transactions already entered into, because the court is determining what the law has always meant. As the Supreme Court explains,

> [W]hen this Court construes a statute, it is explaining its understanding what the statute has meant continuously since the date when it became law. . . . Thus, it is not accurate to say that the Court's decision . . . 'changed' the law that previously prevailed . . . when the case was filed. Rather, given the structure of our judicial system, [a Supreme Court] opinion [interpreting a statute] finally decide[s] what [the statute] had <u>always</u> meant and explain[s] why the Courts of Appeals ha[ve] misinterpreted the will of the enacting Congress.

<u>Rivers v. Roadway Exp., Inc.</u>, 511 U.S. 298, 313 n.12 (1994).

It is unclear what should happen this many years down the road, after the original lender has failed and been placed in receivership, and the property has been sold at a trustee's sale, then re-sold following the trustee's sale. However, because plaintiff has adequately alleged (1) he had a conditional right to

PAGE 13 - OPINION AND ORDER

rescind in 2008;[3] and (2) he exercised that right, he has stated a claim for at least some of the relief he seeks — a declaratory judgment deeming the foreclosure of the Deeds of Trust null and void.

II. The Trustee's Sale

Defendant contends even if plaintiff's 2008 notice of rescission voided WaMu's security interest in the property, any right plaintiff had to the property was extinguished by the 2009 trustee's sale. The Oregon Trust Deed Act ("OTDA") provides

> If, under [Or. Rev. Stat. §§] 86.705 to 86.815, a trustee sells property covered by a trust deed, the trustee's sale forecloses and terminates the interest in the property that belongs to a person to which notice of the sale was given under [Or. Rev. Stat. §§] 86.764 and 86.774 or to a person that claims an interest by, through or under the person to which notice was given.

Or. Rev. Stat. § 86.797(1). The OTDA is "a well-coordinated statutory scheme to protect grantors from the unauthorized foreclosure and wrongful sale of property, while at the same time

---

[3] Defendant contends plaintiff's allegations regarding his conditional rescission right give rise to only a "speculative" claim for relief. Twombly, 550 U.S. at 545. Plaintiff, however, does not broadly assert WaMu violated TILA; he specifically alleges WaMu failed to give "proper Notices of Rescission." Compl. ¶ 6. That allegation is sufficient to put defendant on notice of the nature of plaintiff's claim, and at this stage, plaintiff is not required to set out more specifically the alleged deficiencies in WaMu's notices. See id. at 570 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"); Stanislaus Food Prods. Co. v. USS-POSCO Indus., 782 F. Supp. 2d 1059, 1074 (E.D. Cal. 2011) ("Twombly does not require that plaintiff[s] prove their case or include every factual detail in support of their claims in their complaints.")

PAGE 14 - OPINION AND ORDER

providing creditors with a quick and efficient remedy against a defaulting grantor." Staffordshire Invs., Inc. v. Cal-Western Reconveyance Corp., 149 P.3d 150, 157 (Or. Ct. App. 2006).

Because plaintiff does not allege he did not receive notice of the sale, the question before the court is whether the trustee's sale constituted a sale "under" the OTDA. Or. Rev. Stat. § 86.797(1). In Mikityuk v. Nw. Trustee Servs., Inc., 952 F. Supp. 2d 958, 960 (D. Or. 2013), the borrowers received a home loan secured by a deed of trust. The deed of trust was assigned to a third party, and then to a successor trustee. The successor trustee recorded a Notice of Default and Election to Sell, and sold the property at a trustee's sale. A year and a half later, the borrowers sued to challenge the sale, asserting various violations of Oregon law. Id. at 960-61. The borrowers admitted being in default at the time of the sale and acknowledged receiving notice of the trustee's sale. Id. at 961. This court held "[v]oiding the sale under these circumstances would 'frustrate the legislature's objective to provide a quick and efficient remedy for creditors against defaulting buyers.'" Id. at 969 (quoting Staffordshire, 149 P.3d at 158). Moreover, because the borrowers could have asserted their rights before the sale, permitting the borrowers' action to proceed "would encourage grantors who receive notice of a sale to sit on their rights." Id. at 970.

PAGE 15 - OPINION AND ORDER

The <u>Mikityuk</u> court contrasted the situation with the facts in <u>Staffordshire</u>. In <u>Staffordshire</u>, after notice of a trustee's sale was published, the creditor and grantor entered into a loan forbearance agreement. 149 P.3d at 152. The agreement expressly stated the loan was in default, but provided the creditor was not entitled to foreclose so long as the grantor did not default on his modified payment obligations under the forbearance agreement. <u>Id.</u> at 155. Notwithstanding the forbearance agreement, due to a miscommunication, the trustee's sale went forward and the property was sold. <u>Id.</u> at 153.

The plaintiff in <u>Staffordshire</u> was the high bidder at the auction. The debtor convinced the creditor "not to issue the trustee's deed to [the] plaintiff," and the creditor "returned [the] plaintiff's purchase funds." <u>Id.</u> The plaintiff sued the creditor, "seeking to recover lost profits that it would have realized after reselling the property." <u>Id.</u> The creditor responded "the sale of the property was void" because it had been conducted in violation of the forbearance agreement. <u>Id.</u> The court agreed, declaring "there is nothing in the language of [the predecessor provision to Or. Rev. Stat. §86.797(1)], or, indeed, elsewhere in the Act, to indicate that the legislature intended the auction to be final <u>in the absence of legal authority to sell the property</u>." <u>Id.</u> at 158 (emphasis in original). The court went on to note the trustee's deed had not been executed or delivered.

PAGE 16 – OPINION AND ORDER

Thus, "the statutory presumption of finality" had not yet arisen. Id. Under those circumstances, "the discovery of the agreement to postpone the sale before the execution of the trustee's deed render[ed] the [trustee's sale] void[.]" Id. The court specifically declined to address how the analysis would have been affected had the deed been recorded before the forbearance agreement was discovered.

The facts here do not perfectly align with the facts in either Mikityuk or Staffordshire. Unlike Staffordshire, the trustee's deed here was recorded years ago, so the statutory presumption of finality has arisen. But unlike Mikityuk, plaintiff did not sit on his hands. Although it has been six years since the trustee's sale, plaintiff promptly filed suit after the Supreme Court issued its decision in Jesinoski. Had he made the arguments he now makes at the time of the trustee's sale, they would have been foreclosed by Ninth Circuit precedent.

Plaintiff has alleged sufficient facts to survive a motion to dismiss with respect to the effect of the trustee's sale. Although plaintiff does not appear to dispute he was no longer making payments at the time of the foreclosure sale, he does allege he was current on his payments when he sent the rescission notices. If WaMu had no security interest in the property due to a rescission in March 2008, the FDIC could not have transferred any interest in the property to defendant, and defendant would have had no "legal

PAGE 17 - OPINION AND ORDER

authority to sell the property." <u>Staffordshire</u>, 149 P.3d at 158
(emphasis omitted).

The timing of <u>Jesinoski</u> is also significant. Although
foreclosing trustees and purchasers at trustee's sales have a
significant interest in finality, consumers have a countervailing
interest in avoiding wrongful foreclosure. <u>Jesinoski</u> revealed the
majority of federal courts had "misinterpreted the will of the
enacting Congress," <u>Rivers</u>, 511 U.S. at 313 n.12, in allocating to
borrowers the burden to go to court to enforce their statutory
rescission rights under TILA. Further factual development is
necessary to determine what effect that revelation should have on
the property rights of subsequent buyers of the property.
Defendant's motion to dismiss is denied with leave for defendant to
renew its arguments about the effect of the trustee's sale.

CONCLUSION

Defendant's motion to dismiss (doc. 6) is DENIED. Defendant's
request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 12 th of November 2015.


_____
Ann Aiken
United States District Judge


PAGE 18 - OPINION AND ORDER