# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## EUGENE DIVISION

WILLIAM J. PAATALO,

Plaintiff,

vs.

JPMORGAN CHASE BANK,

Defendant.

Case No. 6:15-cv-01420-AA
OPINION AND ORDER

John A. Cochran
Pacific Property Law, LLC
10121 S.E. Sunnyside Road
Clackamas, OR 97015
    Attorney for plaintiff

Frederick B. Burnside
Davis Wright Tremaine, LLP
1201 Third Avenue, Suite 220
Seattle, WA 98101

Kaley L. Fendall
Kevin H. Kono
Davis Wright Tremaine, LLP
1300 S.W. Fifth Avenue, Suite 2400
Portland, OR 97201-5630
    Attorneys for defendant

PAGE 1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff William J. Paatalo seeks a declaratory judgment deeming null and void the 2009

foreclosure of his home loan and trustee's sale of the property securing the loan. The lender and

original trustee was Washington Mutual Bank, F.A. ("WaMu"). Defendant JPMorgan Chase was

the purchaser of the property at the trustee's sale and the assignee of many of WaMu's assets and

liabilities after WaMu's failure during the financial crisis.

The parties filed cross-motions for summary judgment. For the reasons set forth below,

plaintiff's motion is denied, defendant's motion is granted, and this case is dismissed.

## BACKGROUND

In 2004, plaintiff purchased real property in Yachats, Oregon ("the property") for $449,500.

Compl. ¶ 1. In 2006, he refinanced the property by obtaining an $880,000 "Option Arm" loan and

a nearly $110,000 home equity line of credit ("HELOC") from WaMu. *Id.* ¶ 2. In 2007, the HELOC

was increased to $155,000. *Id.* ¶ 3. Both loans were secured by deeds of trust on the property. *Id.*

¶ 2.

Plaintiff alleges WaMu misapplied payments and reported false derogatory information to

credit reporting agencies on the HELOC account. *Id.* ¶ 5. After disputing those actions with WaMu,

plaintiff alleges he began to suspect fraud. *Id.* ¶ 6. He alleges WaMu inflated the appraised value

of his property, falsified his income on his loan application without his knowledge or consent, and

committed numerous violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*,

including "fail[ing] to provide proper 'Notices of Rescission' on the 2006 loans[.]" *Id.*

Plaintiff further alleges he sent a written "Notice of Rescission" on both loans to WaMu in

March 2008. *Id.* He asserts WaMu responded with a letter declining his rescission and attaching

PAGE 2 - OPINION AND ORDER

a "payoff quote" of just under one million dollars. *Id.* ¶ 7. According to plaintiff, the letter stated he could not rescind unless he first paid off the amount of the debt in full — something he was unable to do. *Id.* In July 2008, plaintiff filed suit in this Court against WaMu, alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq. See Paatalo v. Wash. Mut. Bank*, 2011 U.S. Dist. LEXIS 46350, *1 (D. Or. Apr. 27, 2011).

On September 25, 2008, at the "height of the global financial crisis, [WaMu] was seized by its regulator . . . in what has been described as 'the largest bank failure in U.S. history.'" *Anchor Savs. Bank, FSB v. United States*, 121 Fed. Cl. 296, 302 (Fed. Cl. 2015) (quoting Robin Sidel et al., *WaMu Is Seized, Sold Off to J.P. Morgan, In Largest Failure in U.S. Banking History*, Wall Street Journal, Sept. 26, 2008, *available at* www.wsj.com/articles/SB122238415586576687). Pursuant to a Purchase and Assumption Agreement, the Federal Deposit Insurance Corporation ("FDIC") transferred many of WaMu's assets and liabilities to defendant. *Id.*; Compl. ¶ 28. After WaMu's failure, plaintiff's pending claims against WaMu "went to the FDIC," pursuant to the Federal Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1811 *et seq.* Compl. ¶ 8. In 2011, plaintiff's suit against WaMu was dismissed due to plaintiff's failure to file an administrative claim with the FDIC within the allotted timeframe. *Paatalo*, 2011 U.S. Dist. LEXIS 46350 at *5.

Plaintiff alleges that WaMu recorded a "Notice of Default and Election to Sell" in connection with the property on April 2, 2009. Compl. ¶ 10. A set of additional documents were recorded in connection with the property on July 31, 2009. *Id.* ¶ 11. Those documents included a Notice of Foreclosure, Trustee's Notice of Sale, and affidavits claiming WaMu was the beneficiary of

PAGE 3 - OPINION AND ORDER

plaintiffs' deeds of trust. *Id.* At the trustee's sale, defendant purchased the property for $410,000 cash, and on August 18, 2009, a Trustee's Deed was issued to defendant for the property. *Id.* ¶ 13.

In October 2010, defendant filed an ejectment action against plaintiff in Lincoln County Circuit Court. *Id.* ¶ 14; Fendall Decl. ¶ 2 & Ex. A May 11, 2016 . Plaintiff filed an answer and asserted a host of counter-claims, including claims for declaratory relief, illegal foreclosure, and fraud. Fendall Decl. ¶ 3 & Ex. B May 11, 2016 . On June 2, 2011, the court granted defendant's motion to dismiss plaintiff's counterclaims, granted defendant's motion to voluntarily dismiss the ejectment complaint, and dismissed the case. *Id.* ¶¶ 4, 5 & Exs. C, D. Defendant filed an appeal. *Id.* ¶ 6 & Ex. E. On July 12, 2011, while the appeal was pending, defendant sold the property to a third-party purchaser. Compl. ¶ 16.

In November 2012, the parties signed a settlement agreement ("the settlement agreement").[1] Fendall Decl. ¶ 7 & Ex. F May 11, 2016. Pursuant to the agreement, plaintiff voluntarily dismissed his appeal in state court. The agreement also contained a mutual release of claims, the terms of which are discussed in more detail later in this Opinion.

Plaintiff filed this lawsuit after the Supreme Court decided *Jesinoski v. Countrywide Home Loans*, 135 S. Ct. 790 (2015). Before *Jesinoski*, the federal courts were split in their interpretation of the provisions of TILA governing a borrower's right to rescind a loan. Some courts, including the Ninth Circuit, had held that when a lender denied a request to rescind, the borrower was required to file a lawsuit to enforce his or her rescission rights, and that such a suit must be filed within three years of closing. *See Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003) (holding that

---

[1] By its terms, the agreement is confidential. A copy was filed under seal in this case. Details of the agreement will be discussed in this opinion only as necessary to resolve the parties' motions.

when a lender contests a borrower's right to rescind, "it cannot be that the security interest vanishes immediately upon the giving of notice"). Other courts disagreed, holding that a notice of rescission automatically voids the lender's security interest. *See Sherzer v. Homestar Mtg. Servs.*, 707 F.3d 255, 258 (3d Cir. 2013) (rejecting the argument "that an obligor must both send written notice *and* file suit within three years of the closing date"). In *Jesinoski*, a unanimous Supreme Court held "rescission is effected" at the time the borrower gives notice of intent to rescind, so long as the notice is given within the statutory time period. *Jesinoski*, 135 S. Ct. at 792. Plaintiff argued *Jesinoski* made clear the loan was rescinded in 2008, when he sent the letter to WaMu; WaMu's security interest in the property was voided at that time; and, as a result, defendant never obtained a valid interest in the property through the trustee's sale. Plaintiff asked this Court to declare (1) plaintiff is the sole owner of the property; (2) the foreclosure of the Deeds of Trust was null and void; and (3) all documents recorded on or against title to the subject property after the March 29, 2008 notices of rescission are null and void. Compl. at 9.

Defendant moved to dismiss for failure to state a claim. On November 12, 2015, this Court issued an opinion and order denying defendant's motion to dismiss ("November 2015 Opinion") because "if — as plaintiff alleges — WaMu failed to provide the required disclosures and plaintiff delivered written notice of rescission in March 2008, the rescission was effected and the security interest in plaintiff's property voided at that time." *Paatalo v. JPMorgan Chase Bank*, 146 F. Supp. 3d 1239, 1244 (D. Or. 2015).

Defendant then filed an answer, asserting various affirmative defenses, including defenses of release and waiver stemming from the 2012 Settlement Agreement. Am. Answer ¶¶ 44, 45. Plaintiff moved to strike defendant's affirmative defenses and for judgment on the pleadings. On

PAGE 5 - OPINION AND ORDER

February 24, 2016, this Court struck defendant's preclusion and estoppel defenses but otherwise denied plaintiff's motion ("February 2016 Opinion"). *Paatalo v. JPMorgan Chase Bank*, 2016 U.S. Dist. LEXIS 44093, *6 (D. Or. Feb. 24, 2016). With respect to the defenses of release and waiver, the February 2016 Opinion explained that "[e]ven assuming the questions of fact related to rescission are resolved in plaintiff's favor, [the settlement agreement] might bar plaintiff from asserting his claims in this action." *Id.*

Before the Court now are the parties' cross-motions for summary judgment.

## STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine issue of material fact. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).

## DISCUSSION

### I. *Conferral Pursuant to Local Rule 7-1*

As a preliminary matter, I must address plaintiff's counsel's conferral obligations. Defendant's counsel states that plaintiff's counsel "conferred" on plaintiff's summary judgment motion via a short email stating, in its entirety, "Just wanted to confer with you that my Client and

PAGE 6 - OPINION AND ORDER

I will be filing a motion for summary judgment in the next 10 to 14 days. I assume you will oppose but just wanted to confer so I can file when we have it prepared. Thanks!" Fendall Decl. ¶ 2 & Ex. 1 Apr. 18, 2016. Defendant's counsel wrote back that a more substantive conversation would be necessary to meet the parties' conferral obligations. *Id.* ¶ 3 & Ex. 2. Plaintiff's counsel never responded to that message, and he filed the motion without further conferral. *Id.* ¶ 4. Plaintiff's counsel has not addressed conferral in his filings.

"When conferring about a dispositive motion, the parties must discuss each claim, defense, or issue that is the subject of the proposed motion." L.R. 7-1(a)(2). This is not a meaningless procedural requirement; it exists "to encourage parties to confer and resolve disputes amicably whenever possible, thus preserving judicial resources for only those disputes that truly require court intervention." *Kazemy v. BMW of N. Am., LLC,* 2014 WL 3667217, \*2 (D. Or. Jul. 17, 2014). Here, conferral could have streamlined plaintiff's motion, most notably by bringing to light that the parties planned to introduce different versions of the notices to rescind from WaMu's files.

Plaintiff's counsel's three-sentence email did not even come close to meeting the standard imposed by the local rule. Plaintiff's counsel is admonished in the future to comply with the local rules, and reminded that the Court has discretion to deny any motion on the basis of failure to meet conferral obligations. L.R. 7-1(a)(3).

II.  *Questions of Material Fact Regarding Rescission of the Loan*

To prevail on his claims, plaintiff must show that he had a conditional right to rescind the loan and that he exercised that right within the relevant timeframe. *Paatalo,* 146 F. Supp. 3d at 1245-46. Plaintiff contends he has met this burden. To the contrary, I conclude substantial questions

PAGE 7 - OPINION AND ORDER

of material fact remain as to both issues, and that plaintiff's motion for summary judgment must be denied.

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1118 (9th Cir. 2009) (quoting 15 U.S.C. § 1601) (quotation marks omitted). TILA provides special rescission rights for loans secured by a borrower's principal dwelling. 15 U.S.C. § 1635(a); *Semar v. Platte Valley Fed. Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986). TILA's "buyer's remorse" provision, *Semar*, 791 F.2d at 701, grants buyers the right to rescind within three days of either "the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later[.]" 15 U.S.C. § 1635(a). This provision creates two separate rescission rights. The first is an "unconditional" right to rescind, good for three business days after the transaction. *Jesinoski*, 135 S. Ct. at 792. The second is a "conditional" right, and exists only if the lender has failed to provide the required information, forms, and disclosures or if those materials are deficient. *Id.*; 12 C.F.R. § 226.23(a)(3). The conditional right expires after three years or upon sale of the property "[e]ven if a lender *never* makes the required disclosures." *Jesinoski*, 135 S. Ct. at 792 (emphasis in original).

A.      *Plaintiff's Conditional Right to Rescind*

Plaintiff argues he never received written notice of his write to rescind. In support of this argument, he introduced copies of two documents, each titled Notice of Right to Cancel, which he

PAGE 8 - OPINION AND ORDER

obtained from defendant through discovery. The notices include plaintiff's name and address, but they are unsigned and undated. Paatalo Aff. Ex. BB at 1, 3 Mar. 25, 2016 (doc. 22-5). In an affidavit accompanying his Motion for Summary Judgment, plaintiff states WaMu never provided the unsigned notices to him. Paatalo Aff. at 4 Mar. 25, 2016 (doc. 22-3). In response, defendant produced two different documents, also titled Notice of Right to Cancel. The forms are similar but not identical to the unsigned documents introduced by the plaintiff. These documents, however, bear plaintiff's signature or initials and contain dates corresponding to plaintiff's August 2006 refinance and September 2007 increase in the HELOC. Dunn Decl. Exs. 1-3. Plaintiff, for his part, states he has "no recollection of ever seeing or signing" those documents. Paatalo Aff. at 2 Apr. 21, 2016 (doc. 27-1). Accordingly, there remain questions of material fact as to whether WaMu gave plaintiff written notice of his right to rescind.

In the alternative, plaintiff argues the notices are deficient under TILA and its accompanying regulations. Specifically, he argues that the notices fall short of 12 C.F.R. § 226.23(b)(1)(iv)'s requirement to disclose the effects of rescission because they do not state that rescission of the loan extinguishes the lender's security interest, as set forth in 12 C.F.R. § 226.23(d)(1). But the notices plainly contain such a statement. The signed notices introduced by defendant each explain, under the heading "Your Right to Cancel," that canceling the transaction also cancels the security interest in the home. Dunn Decl. Exs. 1-3. The unsigned notices introduced by plaintiff contain similar statements. Paatalo Aff. Ex. BB Mar. 25, 2016. The notices do not track the exact language of section 226.23(d)(1), but neither does the model form contained in Appendix H to the TILA regulations. *Compare* 12 C.F.R. 226.23(d)(1) (security interest becomes "void" upon rescission) *with* 12 C.F.R. § 1026 Appx. H ("Rescission Model Form (General)" stating that "[i]f you cancel

PAGE 9 - OPINION AND ORDER

the transation, the (mortgage/lien/security interest) is also cancelled"). With respect to explaining

what happens to the security interest after rescission, each notice in the record is either identical to

or substantially similar to this model form. That is precisely what the regulations require. 12 C.F.R.

§ 226.23(b)(2). Plaintiff has not shown that any of the notices in the record, signed or unsigned, are

deficient under the regulations.

B.    *Plaintiff's Exercise of the Right to Rescind*

Plaintiff alleges he sent a handwritten letter on or about March 29, 2008, notifying WaMu

he intended to exercise his right to rescind. Paatalo Aff. at 2 Mar. 25, 2016. He attached a copy of

a handwritten letter to his Motion for Summary Judgment. *Id.* Ex. BB. The letter states "[b]ecause

I'm in within 3-years of the loan closings, I hereby rescind and demand a full return of all money I

have paid to date, and a cancellation of the contracts." *Id.* (capitalization normalized and emphasis

omitted). Plaintiff contends introduction of this letter irrefutably proves he exercised his right to

rescind in 2008.

Defendant does not concede that plaintiff sent a rescission letter to WaMu in 2008. Rather,

defendant points out that plaintiff has introduced no proof of mailing despite asserting he sent the

letter by certified mail. Defendant further asserts the files it inherited from WaMu contained neither

a copy of the letter nor WaMu's purported response with the payoff quote. The only evidence

plaintiff sent the letter to WaMu or that WaMu received it is plaintiff's own testimony. Accordingly,

there remains a material question of fact regarding whether plaintiff notified WaMu within years of

his intent to rescind the loan. Plaintiff's motion for summary judgment must be denied.

II.    *Release of Claims in the Agreement*

Defendant contends it is entitled to summary judgment because the release of claims in the settlement agreement bars plaintiff from bringing the claims asserted in this lawsuit. I agree.

The settlement agreement provides it will be interpreted according to Oregon law. *See* Fendall Decl. Ex. F at 7-8 May 11, 2016. Under Oregon law, "[a] release is a contract in which one or more parties agrees to abandon a claim or right." *Lindgren v. Berg*, 772 P.2d 1336, 1339 (Or. 1989). Releases are favored in Oregon because "[c]ertainty and judicial economy are served when parties can negotiate settlement of their disputes with confidence that their settlement agreements will be upheld and enforced by the courts." *Id.*; *accord Graves v. Tulleners*, 134 P.3d 990, 997 (Or. Ct. App. 2006). Although interpretation of the terms of a release sometimes is a question of fact for the jury, "[i]f the terms of a release agreement are unambiguous, the construction of the contract is a question for the court and is treated as a matter of law." *Pioneer Res., LLC v. D.R. Johnson Lumber Co.*, 68 P.3d 233, 245 (Or. Ct. App. 2003) (quotation marks omitted).

The settlement agreement states that "except as more specifically stated herein, the Parties wish to *finally and forever* resolve all claims, disputes, and differences between them regarding . . . the Account . . . and the Property." Fendall Decl. May 11, 2016 Ex. F at 4 (emphasis added). The settlement agreement defines "the Account" as the deed of trust dated August 10, 2006 and the promissory notes associated with that deed of trust. *Id.* It also specifies that "the Property" is the same Yachats property at issue in the instant lawsuit. *Id.* The settlement agreement further provides that "it is the desire and intention of each of the Parties to effect a *final and complete* resolution of all claims and causes of action" they "ha[ve] or may have] against one another" related to "the

Account" or "the Property." *Id.* at 4-5 (emphasis added). Accordingly, the parties agreed to

"forever" release one another

> from all claims, counter-claims, third-party claims, demands, obligations, judgments, actions, causes of action, appeals, liens and liabilities for injuries, losses, and damages, whether personal, property, economic, non-economic, exemplary or punitive, whether now known or unknown, foreseen or unforeseen, liquidated or unliquidated, that in any way relate to, arose or arise out of the Account or the Property that in any way relate to, arose or arise out of any occurrence, act, or omission that could have been alleged in the Action brought by or on behalf of Chase against Defendant . . . or by or on behalf of Defendant against Chase. . . . relating to the Account or the Property.

*Id.* at 5-6.

Plaintiff first argues that his current claims are not covered by the release because he could not have asserted them until the Supreme Court decided *Jesinoski*. In the November 2015 Opinion, this Court acknowledged that "had [plaintiff] made the arguments he now makes [regarding *Jesinoski*] at the time of the trustee's sale, they would have been foreclosed by Ninth Circuit precedent." *Paatalo*, 146 F. Supp. 3d at 1247. Nonetheless, plaintiff's claims fall within the scope of the release. The phrase "could have been alleged" in the release modifies the words "occurrence," "act," and "omission"; it does not modify "claim," "demand," or any other similar term. The release is clearly intended to sweep broadly to include any and all claims arising out of the factual dispute at issue in the 2010 state-court lawsuit. Moreover, the release specifically states that it covers claims that are "unknown" or "unforeseen." The inclusion of both terms suggest coverage of claims currently available but not known to the parties *and* coverage of claims that have not yet arisen and are not predicted to arise by the parties. Finally, terms such as "forever," and "complete" drive home the parties' intent to fully resolve their differences related to the property, deed of trust, and notes.

Plaintiff's current claims are covered by the release because they arise out of occurrences, acts, and omissions he could have alleged in the 2010 state court action.

Next, plaintiff contends his request for declaratory relief in this action is not covered by the release because rescission under TILA is remedy, not a "claim" or a "cause of action." This semantic argument is an attempt to escape the clear intent of the release. The most straightforward interpretation of the release is as a promise not to sue each other in the future over the property or deed of trust. Plaintiff then filed this lawsuit against defendant, asking the Court to declare that the property is his and the trustee's sale is void. This is plainly a claim, cause of action, or demand covered by the release.

Plaintiff also avers that the release should be invalidated on the ground of mutual mistake. His theory is that *Jesinoski* revealed both parties entered into the settlement agreement under the misconception that defendant had rights to the property it never possessed. Accepting for the sake of argument that the parties' failure to anticipate a change in the law[2] may correctly be termed a "mistake of fact," the argument is unavailing here. In Oregon, "mutual mistake is not a basis on which to void a release agreement." *Raymond v. Feldmann*, 853 P.2d 297, 299 (Or. Ct. App. 1993); *Graves*, 134 P.3d at 997. Rather, releases in settlement agreements may be invalidated only on grounds of misrepresentation or unconscionable conduct. *Graves*, 134 P.3d at 997. In *Wheeler v. White Rock Bottling Co.*, 366 P.2d 527, 530 (Or. 1961), a personal injury case, the Oregon Supreme

---

[2] Chase argues that *Jesinoski* did not change in the law, citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 & n.12 (1994) for the proposition that when the United States Supreme Court interprets a statute, "it is explaining its understanding" of what the statute "has always meant." It is true that *Jesinoski* did not change the law in the sense that it did not change the meaning of TILA. However, *Jesinoski* indisputably changed the governing case law in the Ninth Circuit, which had previously interpreted TILA incorrectly.

PAGE 13 - OPINION AND ORDER

Court acknowledged the "attractive policy reasons for adopting a rule that would permit perfectly honorable releases to be repudiated in the event of aggravation of an injury or the discovery of undiagnosed injuries." However, the court ultimately determined those policy concerns were outweighed by the "less compassionate but equally sound policy reasons for requiring persons of legal age and capacity to stand by their covenants, including bargains containing an element of chance." *Id.* Plaintiff signed a broad release of claims and received valuable consideration in return. The bargain he struck included an element of chance. He is now bound to the terms of that agreement, even though an "undiagnosed injury" in the form of a forfeited *Jesinoski* argument has materialized.

Finally, plaintiff asserts defendant is not entitled to summary judgment because it has not counterclaimed to vacate the rescission. This argument ignores the fact that defendant is not seeking any relief from this Court. Plaintiff is seeking a declaration he is the owner of the property. The release bars him from seeking that relief in an action against defendant. Defendant is under no obligation to make a counterclaim to succeed in its motion for summary judgment.

The unambiguous terms of the release in the settlement agreement bar this lawsuit. Defendant is entitled to summary judgment on its affirmative defense of release.

Defendant also is entitled to summary judgment on its affirmative defense of waiver. Waiver is the intentional relinquishment of a known right. *Oracle Am., Inc. v. or. Health Ins. Exch. Corp.*, 145 F. Supp. 3d 1018, 1043 (D. Or. 2015). Through the release, plaintiff knowingly and intentionally waived his right to take any future legal action against defendant with respect to the property and the deed of trust. The change in the law effected by *Jesinoski* does not invalidate this waiver. *Cf. United States v. Cardenas*, 405 F.3d 1046, 1048 (9th Cir. 2005) (refusing to invalidate

PAGE 14 - OPINION AND ORDER

defendant's appeal waiver even though the Supreme Court's intervening decision in *United States v. Booker*, 543 U.S. 220 (2005) substantially changed federal sentencing law).

## CONCLUSION

Plaintiff's Motion for Summary Judgment (doc. 22) is DENIED.  Defendant's Motion for Summary Judgment (docs. 37 & 39) is GRANTED and this case is DISMISSED.  Defendant's request for oral argument is DENIED as unnecessary.

IT IS SO ORDERED.

Dated this ⁷ of ~~August~~ September 2016.

Ann Aiken
United States District Judge